Aaron W. Baker, OSB No. 922220
Email: aaron@awbakerlaw.com
Serena L. Liss, OSB No. 154799
Email: serena@awbakerlaw.com
BAKER LAW PC
One SW Columbia, Suite 1850
Portland, OR 97204
Phone: 503/ 234-8800
Fax: 503/ 525-0650

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TONYA TUCKER TAFOLLA**, | Case No. |
| Plaintiff, | COMPLAINT |
| v. | Unlawful Employment Practices |
| **UBH OF OREGON, LLC dba CEDAR HILLS HOSPITAL,** | (ORS 659A.030; 42 U.S.C. § 1981; ORS 659A.199) |
| Defendant. | **DEMAND FOR JURY TRIAL** |

**Nature of the Action**

1.

Plaintiff brings this action for monetary relief, damages, costs, punitive damages, and attorney fees for herself to redress injuries done to her by Defendant

COMPLAINT - 1

or officers, employees, or agents of said Defendant in contravention of her federally protected rights in violation of the 42 U.S.C. § 1981, and her state protected rights in violation of Oregon anti-discrimination laws, ORS 659A.030 and ORS 659A.199.

## Jurisdictional Allegations

2.

The court has jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. § 2000 *et seq.*, 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over Plaintiff's state claims pursuant to 42 U.S.C. § 1367 as the state claims arise from the same nucleus of operative facts as the federal claims.

3.

Venue is proper within the District of Oregon, Portland Division, pursuant to 28 U.S.C. § 1391(b) because all or substantially all the events or omissions giving rise to the claims arose in this judicial district.

## General Factual Allegations

4.

Defendant was and is at all material times herein mentioned a Delaware Limited Liability Corporation with its principal place of business in Portland, Oregon. Defendant does business as Cedar Hills Hospital.

5.

Defendant transacted business, including but not limited to hiring and employing Plaintiff, in Portland, Oregon.

6.

Plaintiff was and is a resident of Oregon at all material times herein unless otherwise so stated.

7.

At all material times herein, Plaintiff was supervised by Defendant's employees or agents and Plaintiff relied on the actual or apparent authority of Defendant's employees, supervisors, and management for Defendant.

///

8.

Defendant discriminated against Plaintiff by engaging in and/or allowing a continuing course of conduct, including but not limited to, discrimination and harassment, and retaliated against Plaintiff for reporting and opposing said harassment and discrimination.

9.

Plaintiff is a black, African American lesbian female.

10.

Defendant hired Plaintiff on or about March 8, 2019 as a Nurse Manager at the Cedar Hills Hospital. Defendant promoted Plaintiff to Assistant Chief Nursing Officer during her employment. Plaintiff was hired remotely because she lived in a different state at the time she was hired.

11.

During Plaintiff's employment with Defendant Plaintiff was subjected to severe and/or pervasive discriminatory comments and actions based on her race and sexual orientation including but not limited to the following:

a. Defendant took a photograph of the leadership team. Plaintiff and an administrative assistant—the only people of color in the photograph—were placed at the edge of the group. The Chief Nursing Officer Jennifer Brown—Plaintiff's boss—commented that the "minorities were on the end so they could be easily cropped out" or words to that effect. The interim Chief Executive Officer ("CEO") Tim Brady laughed at the comment.

b. Because Plaintiff is a person of color, she was asked to sit in a meeting during which the Chief Financial Officer Michael Metzger terminated the employment of a person of color. During the meeting, Metzger yelled at the employee that was being terminated. To stop the yelling, Plaintiff intervened and told the employee that the company was "separating you; let me walk you to your office to get your stuff" or

       words to that effect. After the meeting, Plaintiff told Metzger "I know why you had me in there" and Metzger responded, "It looks better; she'll probably claim discrimination" or words to that effect.

c. During a morning meeting with management, Brady said it "seems like Jamaica out there" or words to that effect. He was referring to the fact that there was a black nurse who Brady assumed was Jamaican talking to a doctor outside the conference room. Plaintiff responded, "guys, why are we talking about this?" or words to that effect.

d. Brady told Plaintiff that there are "too many Indian doctors here" during a morning meeting with management.

e. Various racially discriminatory comments were made about black patients at the hospital. For example, Defendant's staff would say that they are afraid of black patients. They would also say that black patients are more aggressive than other patients. Similarly, Brown commented that a black patient made the staff afraid because he was large in size. Conversely, white patients who had previously attacked staff were not treated similarly.

f. Various discriminatory comments were made about transgender patients at the hospital. For example, Brady commented that since coming to Portland he "has to worry about who has what parts and what to call them" or words to that effect. Brady also said that he "can't keep up with who is trans and who is gay" or words to that effect.

g. During Plaintiff's last two months of employment with Defendant, Plaintiff hired four female nurses who happened to have blonde hair. Brown commented that "Tonya must be attracted to blondes" or words to that effect.

///

///

COMPLAINT - 4

    h.    Later, Plaintiff hired female nurses who did not have blonde hair. Comments were made that "Tonya must not like blondes anymore" or words to that effect.

    i.    When Defendant proposed that two black employees share an office, Brady commented that the two women would get along well because "they're both black" or words to that effect. Brown then remarked that Plaintiff should also be put in that office because she is black.

    j.    When referring to Plaintiff's future with Defendant and the potential for her to transfer and be promoted at another one of Defendant's hospitals, Brown told Plaintiff that Plaintiff "is not going anywhere because [Defendant] only wants a middle-aged white man or a middle-aged white woman sitting in this chair," or words to that effect, as Brown pointed toward the CEO's office and then toward her own chair.

12.

Brown treated staff poorly and was abusive to staff during Plaintiff's employment. For example, she would yell "I'll fire you!" or words to that effect. Brown also would lie to staff and yell at them regularly. On one occasion, Plaintiff had to help remove the person who was being yelled at from the meeting to stop Brown from yelling.

13.

Various staff members called the compliance line to complain about Brown. The employees' complaints were printed and given to Brown by Jennifer Villareal from Human Resources ("HR") and/or the CEO. One of the complaints stated "Please help us in Oregon. They're out of control." or words to that effect. After Brown received the complaints, she exclaimed, "they're right, I'm out of control. I'll fire you all!" or words to that effect.

14.

During Plaintiff's employment she asked Marty Perry, a gay male and Defendant's risk manager, how he talks to Brown and how to get Brown to stop

making discriminatory and/or inappropriate comments. Perry responded that "you have to approach her carefully" and explained that Brown is known to retaliate against employees, or words to that effect.

15.

In or about summer of 2019, Plaintiff reported and complained to HR about how Brown treats staff. Villareal came to the hospital to investigate Plaintiff's complaints. After Brown had a meeting with Villareal, Brown told Plaintiff that "everything was good," or words to that effect, and explained that the only issue Villareal brought up was that the staff wanted to see Plaintiff more. After the investigation, Brown's behavior worsened. Subsequently Brown proclaimed "I can do what I want" or words to that effects.

16.

During a later unrelated phone call with Villareal, Plaintiff asked Villareal about Brown's comment that the staff wanted to see Plaintiff more. Villareal seemed confused and responded, "I'm sorry, that's not want I said," or words to that effect.

17.

In or about December of 2019, Plaintiff witnessed Brown make misrepresentations in an audit. Specifically, Brown documented that the audit had been done when in fact it had not. To Plaintiff's knowledge, failure to complete the audit could result in a citation to Defendant and is a violation of state rule, law and/or regulation.

18.

Because the hostile workplace did not change for the better after her complaints, Plaintiff had no reasonable alternative but to end her employment with Defendant. Based on Plaintiff's prior experiences with complaints to HR, she did not believe making a complaint would change anything and indeed would likely make the situation with Defendant worse. Plaintiff gave notice on or about January 10, 2020 to Defendant that her last day would be January 24, 2020.

19.

One business day after Plaintiff submitted her resignation notice, Plaintiff was contacted by Villareal and Defendant's Regional or Divisional CEO Peggy Minnick separately. Plaintiff told both Minnick and Villareal that she believed they reached out to Plaintiff because she "checked three boxes"—she is gay, black, and female.

20.

Two days later, Plaintiff had meetings with Villareal and with Minnick. She told them that she had complained to HR months ago, which made the situation with Brown worse. Plaintiff also reported and complained that she witnessed Brown make misrepresentations in an audit. Furthermore, Plaintiff reported and complained that she experienced discriminatory comments, including but not limited to:

    a.    The comment that it "seems like Jamaica out there."

    b.    The comment that the minorities could be cropped out of the photograph.

    c.    Brady's comment that the two black women would get along well because "they're both black" or words to that effect and Brown's follow-up comment that Plaintiff should also be in the office because she is black.

    d.    The comment that Plaintiff "must be attracted to blondes" or words to that effect.

Plaintiff told them that something must change because she was treated terribly by Defendant. Plaintiff specifically told Villareal and Minnick she feared further retaliation and mistreatment.

21.

The days following Plaintiff's complaint, Brown's attitude changed again and she avoided Plaintiff and would only talk to Plaintiff when she had to. Plaintiff believed the change in Brown's attitude and behavior was due to the additional

complaints she made to HR and to Minnick.

22.

The following Monday, January 20, 2020, was Martin Luther King, Jr. Day. Brown had previously told Plaintiff she would take that day off work. However, Brown was at the morning manager meeting. During that meeting, there was a conversation about the fact that insurance companies would not be open because of the holiday. When Brown said that Martin Luther King, Jr. Day was a holiday, she put the word "holiday" in air quotes motioning with two fingers on each hand, stating "It's a 'holiday'" or words to that effect.

23.

Plaintiff was scheduled to be on call during that week. However, during the meeting when it was asked who was on call, Brown announced that a different person (not Plaintiff) was on call. Plaintiff was surprised and tried to ask Brown why she was not on call and Brown responded, "there was an email," or words to that effect. Plaintiff tried to tell Brown that the staff did not know that Plaintiff was not on call because they had been calling her all morning. Brown simply turned her back on Plaintiff. At the end of the meeting, Brown and Plaintiff were in the hall. Plaintiff asked Brown if the staff knows Plaintiff is not on call. Brown responded, "you should read the email," or words to that effect. Plaintiff told Brown that she had not received any emails about a change in the person scheduled to be on call.

24.

Plaintiff went with Brown into the administrative assistant's office. Brown pointed at Plaintiff and said to C. Lamar Frizell—the CEO at the time—"see this attitude, it's not going to work," or words to that effect. Frizell asked what was going on and Brown responded aggressively with "That right there! This!" or words to that effect. Plaintiff told Frizell that she had asked about not being on call and Brown again said "This!" Then, Brown yelled to Metzger, "give Tonya her last check; this is her last day," or words to that effect. Plaintiff asked to speak to Frizell alone. During the meeting, Frizell told Plaintiff "we're just going ahead with

COMPLAINT - 8

separation," or words to that effect. He gave no further explanation. During the meeting, Brown poked her head into the office, looked at Frizell, and said "I spoke to Jennifer Villareal and she said no," or words to that effect.

25.

Frizell directed Ryan Harris to walk Plaintiff to her office to collect her belongings. In her office and with Harris still present, Plaintiff called Villareal, telling her that today is Plaintiff's last day. Villareal did not seem surprised. Plaintiff said to Villareal that she and Minnick were the only people who knew everything that was going on with Plaintiff and that there as a 50% chance Villareal had told Brown. Villareal responded that she understands that Plaintiff is upset and told her to get her stuff together. Harris apologized several times while Plaintiff gathered her belongings and as he helped her carry her things to her car. Harris went back inside to collect Plaintiff's final checks and brought them to her car so Plaintiff would not have to reenter the building. Harris gave Plaintiff a hug, and then Plaintiff left.

## First Claim for Relief
## 42 U.S.C. § 1981 – Discrimination

26.

Plaintiff realleges paragraphs 1 through 25.

27.

Defendant discriminated against Plaintiff in the terms and conditions of her employment, including but not limited to terminating and/or constructively discharging Plaintiff, on the basis of her race in violation of 42 U.S.C. § 1981.

28.

As a result of the discrimination by Defendant, Plaintiff has incurred economic damages including lost wages in an amount to be proven at trial and Plaintiff will continue to have lost income and benefits into the future.

///
///

29.

As a direct and proximate result of Defendant's conduct Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to her non-pecuniary loss in an amount to be determined at trial.

30.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's federally protected rights. Defendant should be assessed punitive damages in an amount to be determined at trial.

31.

Plaintiff is entitled to recover her costs and attorney fees pursuant to 42 U.S.C. § 1988.

## Second Claim for Relief
## ORS 659A.030 – Discrimination

32.

Plaintiff realleges paragraphs 1 through 31.

33.

Defendant discriminated against Plaintiff in the terms and conditions of her employment, including but not limited to terminating and/or constructively discharging Plaintiff, on the basis of her race and/or sexual orientation in violation of ORS 659A.030.

34.

As a result of the discrimination by Defendant, Plaintiff has incurred economic damages including lost wages in an amount to be proven at trial and Plaintiff will continue to have lost income and benefits into the future.

35.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to her non-pecuniary loss in an amount to be determined

at trial.

36.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's state protected rights. Defendant should be assessed punitive damages in an amount to be determined at trial.

37.

Plaintiff is entitled to recover her costs and attorney fees pursuant to ORS 659A.885 and ORS 20.107.

### Third Claim for Relief

### 42 U.S.C. § 1981 – Hostile Work Environment

38.

Plaintiff realleges paragraphs 1 through 37 above as fully set forth herein.

39.

Defendant's conduct had the purpose and effect of creating an intimidating, hostile, and offensive work environment, and had the purpose and effect of unreasonably interfering with Plaintiff's work performance, and otherwise adversely affected her employment opportunities.

40.

Plaintiff realleges her damages as stated in Paragraphs 28 through 31 above.

### Fourth Claim for Relief

### ORS 659A.030 – Hostile Work Environment

41.

Plaintiff realleges paragraphs 1 through 40.

42.

Defendant's conduct had the purpose and effect of creating an intimidating, hostile, and offensive work environment, and had the purpose and effect of unreasonably interfering with Plaintiff's work performance, and otherwise

adversely affected her employment opportunities.

43.

Plaintiff realleges her damages as stated in Paragraphs 34 through 37 above.

### Fifth Claim for Relief
### 42 U.S.C. § 1981 – Retaliation

44.

Plaintiff realleges paragraphs 1 through 43.

45.

Defendant discriminated against Plaintiff in the terms and conditions of her employment in substantial motivating part due to Plaintiff's good faith reporting and/or opposition to unlawful employment practices which violated 42 U.S.C. § 1981.

46.

Plaintiff realleges her damages as stated in Paragraphs 28 through 31 above.

### Sixth Claim for Relief
### ORS 659A.030 – Retaliation

47.

Plaintiff realleges paragraphs 1 through 46.

48.

Defendant discriminated against Plaintiff in the terms and conditions of her employment in substantial motivating part due to Plaintiff's good faith reporting and/or opposition to unlawful employment practices which violated ORS 659A.030.

49.

Plaintiff realleges her damages as stated in Paragraphs 34 through 37 above.

### Seventh Claim for Relief
### ORS 659A.199 – Whistleblower Retaliation

50.

Plaintiff realleges paragraphs 1 through 49.

///

51.

Defendant retaliated against Plaintiff in the terms and conditions of her employment in substantial part for opposing and/or reporting in good faith what Plaintiff believed to be violations of federal and/or state laws, rules, or regulations.

52.

Plaintiff realleges her damages as stated in Paragraphs 34 through 37 above.

### Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For permanent injunctive relief enjoining Defendant, its officers, employees, and agents from engaging in any harassment or discrimination based on race or for retaliating against any employee opposing unlawful employment practices;
2. Economic damages and future losses to be determined at trial;
3. Non-economic damages to be determined at trial;
4. Punitive damages in an amount to be determined at trial;
5. Reasonable costs and attorney fees; and
6. For such other and further relief as the Court may deem just and equitable.

DATED this 11th day of January, 2021.

BAKER LAW PC

*s/ Serena L. Liss*
Aaron W. Baker, OSB No. 922220
Serena L. Liss, OSB No. 154799
Attorneys for Plaintiff